**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

| | |
|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY | Case No. |
| Plaintiff, | |
| v. | |
| DALE ALLEN SEILER, JASETYN RICH, A&D FARMS PARTNERSHIP, CODY RAY NIX, as Special Administrator of The ESTATE OF SARA LEA NIX, Deceased; CODY RAY NIX, as Special Administrator of The ESTATE OF RAYLEA CHANLER NIX, Deceased; CODY RAY NIX, individually and As Next Friend of CAMDEN RAY NIX, a minor, | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Crum & Forster Specialty Insurance Company ("Plaintiff" or "CFSIC"), by and through its undersigned counsel, KUTAK ROCK LLP, and for its Declaratory Judgment Complaint against Defendants Dale Allen Seiler, Jasetyn Rich, A&D Farms Partnership, Cody Ray Nix, as Special Administrator of The Estate of Sara Lea Nix, Deceased; Cody Ray Nix, as Special Administrator of The Estate of Raylea Chanler Nix, Deceased; Cody Ray Nix, individually and as Next Friend of Camden Ray Nix, a minor, states and alleges as follows:

**INTRODUCTION**

1.      This is a declaratory judgment action seeking a determination that Plaintiff CFSIC owes no duty to defend or indemnify under a general liability policy bearing CFSIC policy number BAK-89734-4 for the policy period beginning January 15, 2025, and ending January 15, 2026,

issued to Defendants Dale Allen Seiler ("Seiler") and A&D Farms Partnership ("A&D") in connection with a highway collision that allegedly caused the deaths of Sara Lea Nix and Raylea Chanler Nix ("Collision").  *See* CFSIC Policy, attached as **Exhibit "A."**

2.      Defendants Cody Ray Nix, as Special Administrator of The Estate of Sara Lea Nix, Deceased; Cody Ray Nix, as Special Administrator of The Estate of Raylea Chanler Nix, Deceased; Cody Ray Nix, individually and as Next Friend of Camden Ray Nix, a minor, (collectively "Nix Defendants") filed a wrongful death complaint ("Underlying Complaint") against, *inter alia,* Seiler, A&D and Rich in the Circuit Court of Miller County, Arkansas Division, seeking damages for *inter alia,* negligence, gross negligence and negligence per se against Seiler and Rich; vicarious liability and direct negligence against A&D; and punitive damages.  *See* Complaint, attached as **Exhibit "B."**

## PARTIES

1.      CFSIC is a Delaware corporation with a statutory home office in Delaware and main administrative office in Morristown, New Jersey. Thus, CFSIC is deemed a citizen of Delaware and New Jersey.

2.      Upon information and belief, Seiler is a citizen of Arkansas, with an address of 291 Lafayette 211, Bradley, AR 71826.

3.      Upon information and belief, A&D Farms is a partnership entity with its principal place of business at 291 Lafayette 211, Bradley, AR 71826. Upon information and belief, the partners are Raymond Unruh, James Michael Hilton, Billy R. Impson and Dale Allen Seiler.

4.      Upon information and belief Raymond Unruh is recently deceased as of March 26, 2026.

5.      Upon information and belief, James Michael Hilton, Billy R. Impson and Dale Allen Seiler are citizens of Arkansas.

6.      Upon information and belief, Rich is a citizen of Arkansas, with an address of 4592 Miller County Unit 34, Doddridge, AR 71834.

7.      Upon information and belief, Cody Ray Nix, as Special Administrator of The Estate of Sara Lea Nix, Deceased; Cody Ray Nix, as Special Administrator of The Estate of Raylea Chanler Nix, Deceased; Cody Ray Nix, individually and as Next Friend of Camden Ray Nix, a minor, (collectively "Nix Defendants") are citizens of Arkansas, with an address of 219 West First Street, Bradley, AR 71826.

**JURISDICTION AND VENUE**

8.      CFSIC brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202.  An actual controversy exists between the parties, as more fully alleged herein.

9.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy requirement is met because the damages in this case exceed $75,000.00, as more fully alleged herein.

10.      This Court has personal jurisdiction over the parties as (1) Seiler is a citizen of Lafayette County, Arkansas; (2) A&D is a corporate entity with its principal place of business in Lafayette County, Arkansas; as are all partnership members (3) Rich is a citizen of Miller County, Arkansas; (4) Nix Defendants are citizens of Lafayette County, Arkansas; (5) CFSIC is a Delaware corporate entity with its main administrative office in New Jersey; (6) the highway collision took place in Lafayette County, Arkansas; and (7) the Policy was issued to Seiler and A&D in Lafayette County, Arkansas.

11.      Pursuant to 28 U.S.C. § 1391, venue is proper in this Court, as a substantial part of the events giving rise to the claims asserted herein occurred in Lafayette County, Arkansas.

12.      All necessary parties have been joined in this action.

3

**FACTUAL BACKGROUND**

**Seiler Secures Insurance Coverage for A&D**

13.    CFSIC issued a Policy, policy number BAK-89734-4 to A & D; Seiler; and non-party Dale & Ashley Seiler Family Trust, effective January 15, 2025, to January 15, 2026, with limits of $1,000,000 per occurrence and $2,000,000 general aggregate.  *See* Exhibit "A."

14.    The Policy, in pertinent part, included the following exclusions and provisions:

**FARMING EXCLUSIONS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following are added:

**Farm Premises and Operations**

This insurance does not apply to "bodily injury" or "property damage" arising out of or resulting from, in whole or in part:

1. the ownership, maintenance, use or rental by an insured of a "farm premises" or a portion of "farm premises" that is, in whole or part, not used for "farming", even if there is a portion of the "farm premises" that is being used for "farming";
2. any instruction given to a person or persons about horses, tack and equipment, horseback riding or horsemanship
3. ownership, use or maintenance of equipment under contract to others for a charge;
4. any substance released or discharge from any aircraft;
5. the insured's performance or failure to perform "farming" operations for others for a charge under contract or agreement;
6. the ownership, storage, use or application of herbicides, insecticides, pesticides or biological agents;
7. the ownership, storage, use, sale, distribution or application of genetically altered seeds or crops; or
8. fire or smoke arising out of "farming" operations.
9. Mechanical, animal or amusement rides operated by or on behalf of any insured.

C. **SECTION V – DEFINITIONS** is amended and the following definitions are added:

1. "Farming", which includes ranching, means:

   a. The growing and marketing of:

4

(1) Field crops, fruits, mushrooms, nuts or vegetables.

(2) Flowers, greenhouse or nursery stock or sod.

(3) Trees.

**b.** The raising or keeping of bees, animals for pets, livestock, poultry or worms.

**c.** Aquaculture, including the cultivation of the natural products of water such as fish and shellfish.

**d.** The operation of roadside stands maintained solely for the sales of produce grown on your "farm premises".

"Farming" does not mean the operation or use of commercial feed lots, meatpacking or slaughtering facilities.

**2.** "Farm premises" means the location shown in the Declarations used for "farming".

*See* Policy form SB063-0521, at Exhibit "A."

*   *   *

<h2 align="center">AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION</h2>

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. SECTION I- COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, paragraph g. is deleted and replaced with the following:

g. Aircraft, Auto Or Watercraft

"Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

B. The following is deleted under **SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance**, paragraph **b. Excess Insurance:**

If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A -Bodily Injury and Property Damage Liability.

*See* Policy form SB056 06 15, at Exhibit "A."

5

*     *     *

**POLLUTION**

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

    **a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2) The "bodily injury" or "property damage" occurs during the policy period.

*     *     *

    **f.  Pollution**

    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (iii)   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

6

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(1) Any loss, cost or expense arising out of any:
(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

\*        \*        \*

*See* CG 00 01 12/07, at Exhibit "A."

### The Controlled Burn and Subsequent Highway Collision
### Allegations of Complaint

13.     Pursuant to the Complaint filed by Nix Defendants, on or about "October 16, 2025, Seiler allegedly initiated a controlled burn of crop residue and stalks on agricultural land owned or controlled by him and/or [A&D] immediately adjacent to U.S. Highway 160 in Lafayette County, Arkansas."  *See* Exhibit "B" at ¶ 11.

14.     "Upon information and belief, before initiating the burn, Seiler contacted the Arkansas Department of Transportation" ("ARDOT") regarding the controlled burn. *See* Exhibit "B" at ¶ 12.

15.     Seiler allegedly "grew impatient waiting for ARDOT to respond and commenced burning before ARDOT arrived and before appropriate coordination and safeguards were in place." *Id.*

16.    "Upon information and belief, as a result of the burn, dense smoke blew across Highway 160, resulting in a hazardous condition on and adjacent to the roadway." *See* Exhibit "B" at ¶ 13.

17.    As the fire grew out of control, Seiler, "directed or requested [Rich] to retrieve and deploy a fire truck to address the out-of-control burn that Seiler himself had" commenced. *See* Exhibit "B" at ¶ 14.

18.    Rich allegedly "positioned the fire truck on the south side of Highway 160, partially on the shoulder and partially on the grass, facing west, in a manner that obstructed or impeded traffic on the highway without any advance warning, traffic control, flaggers, signage, flares, or traffic cones, while smoke continued to reduce visibility." *See* Exhibit "B" at ¶ 15.

19.    At approximately the same time, a tractor-trailer was traveling eastbound on Highway 160. *See* Exhibit "B" at ¶ 17.

20.    "Sara Lea Nix, was traveling westbound on Highway 160 in her 2021 Chevrolet Tahoe with her 3-year-old daughter, Raylea Chanler Nix, as a passenger." *See* Exhibit "B" at ¶ 18.

21.    As the tractor-trailer "encountered the smoke and the fire truck obstructing the roadway and, in attempting to maneuver around it, swerved into the path of a westbound vehicle driven by Sara Lea Nix, with her daughter, Raylea, as a passenger." *See* Exhibit "B" at ¶ 19.

22.    The "tractor-trailer struck the Nix vehicle, causing a violent, head-on collision that killed both Sara Lea Nix and Raylea Chanler Nix." *See* Exhibit "B" at ¶ 20.

## COUNT I

## DECLARATORY JUDGMENT

23.     Plaintiff incorporates allegations 1-22 as if fully set forth herein at length.

24.     For reasons set forth more fully above, CFSIC contends that the allegations contained in the underlying Complaint are sufficient to trigger multiple exclusions in the Policy.

25.     There is no duty to defend or indemnify under the Policy in connection with the highway collision because the Policy does not apply to "bodily injury" or "property damage" arising out of or resulting from, in whole or in part from "fire or smoke arising out of 'farming' operations."

26.     Moreover, the policy excludes coverage for:

"Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

27.     Finally, the Policy excludes coverage for: "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

28.     Pursuant to the allegations of the underlying Complaint, the controlled burn caused dense smoke to blow across Highway 160, resulting in a hazardous condition on and adjacent to the roadway.

29.     It is alleged that, as the fire grew out of control, Seiler, acting in his capacity as a partner and principal of A & D, directed or requested Rich to retrieve and deploy a fire truck to address the out-of-control burn that Seiler himself had negligently initiated.

30.     The Complaint contends that Rich, responding to the fire at the direction and under the control of Seiler or as the agent, servant, and/or employee of Seiler and/or A & D, positioned the fire truck on the south side of Highway 160, partially on the shoulder and partially on the grass, facing west, in a manner that obstructed or impeded traffic on the highway without any advance warning, traffic control, flaggers, signage, flares, or traffic cones, while smoke continued to reduce visibility.

31.     The Complaint maintains that the positioning of the fire truck in or near the travel lanes of Highway 160, combined with the dense smoke from Seiler's burn, created an extreme and immediately life-threatening hazard to motorists traveling on the highway.

32.     At the same time, it is alleged that a tractor- trailer was traveling eastbound on Highway 160, while Sara Lea Nix, was traveling westbound on Highway 160 in her 2021 Chevrolet Tahoe with her 3-year-old daughter, Raylea Chanler Nix, as a passenger.

33.     It is alleged that the tractor-trailer encountered the smoke and the fire truck obstructing the roadway and, in attempting to maneuver around it, swerved into the path of a westbound vehicle driven by Sara Lea Nix, with her daughter, Raylea, as a passenger.

34.     The tractor-trailer then struck the Nix vehicle, causing a violent, head-on collision that killed both Sara Lea Nix and Raylea Chanler Nix.

35.     The policy contains an Absolute Auto, Aircraft and Watercraft Exclusion endorsement, and does not provide coverage for bodily injury or property damage, which involve the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

36.     But for the positioning of the fire truck on the side of the road, which caused a swerve reaction by the driver of the tractor-trailer, the Complaint argues that the accident would not have happened.

37. CFSIC contends that the conduct alleged in the Complaint falls within the scope of the absolute auto exclusion.

38. Moreover, the Farming Exclusion precludes coverage for bodily injury or property damage arising out of fire or smoke from "farming" operations.

39. The controlled burn was a farming operation, and the accident is alleged to have involved fire or smoke that began from the farming operations.

40. The exclusion applies because the Complaint explicitly states that the smoke obscured the roadway and caused the collision.

41. The Complaint contends that violation of smoke management regulations flowing out of the controlled burn caused the events, and that the burn was the reason that flagging, flares or warning signs were required in this location.

42. Both the smoke and the fire truck obstructing the roadway were alleged as causes of the accident.

43. The Policy also has an Exclusion – Hostile Fire endorsement and the commercial general liability form also has a Pollution exclusion.

44. The Hostile Fire Exclusion may apply if the fire became uncontrolled, as alleged in the Complaint or escaped its intended area.

45. The Pollution Exclusion precludes coverage for bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants," including smoke.

46. The policy defines "pollutants" to include smoke.

47. Accordingly, the Policy provides no coverage in connection with any bodily injury claim asserted in connection with the Collision.

48.     For the foregoing reasons, CFSIC is entitled to a declaration that no duty to defend or indemnify is owed under the Policy in connection with the Collision.

49.     For the foregoing reasons, an actual controversy exists between CFSIC and the Defendants herein, which vests in the Court the power to declare the rights and liabilities of the parties.

**WHEREFORE,** Plaintiff CFSIC respectfully prays for judgment against Defendants, including:

A. A declaration that there is no duty to defend and/or indemnify Defendants under the Policy in connection with any claims that were raised or could have been raised as a result of the Collision;

B. A declaration that the Policy affords no coverage in connection with any claims that were raised or could have been raised as a result of the Collision; and

C. The provision of such other and further relief as this Court deems just and equitable.

Dated:  May 22, 2026

BY:  *J.R. Carroll*_____
J.R. Carroll, Esq. (2003149)
KUTAK ROCK LLP
1277 E. Joyce Boulevard
Suite 300
Fayetteville, AR  72703
(479) 973-4200 (Telephone)
JR.Carroll@kutakrock.com
COUNSEL FOR PLAINTIFF

12

## CERTIFICATE OF SERVICE

I, J.R. Carroll, do hereby certify that on May 22, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to:

All Counsel of Record.

BY: *J.R. Carroll*_____
J.R. Carroll, Esq. (2003149)